IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

KENNETH WATKINS,                        )
                                        )
                Plaintiff,              )
                                        )
        v.                              )       Civil Action No. 20-401
                                        )
DAVID LOZIER, as an individual, and     )
DWAN WALKER, in his individual and      )
official capacity, and                  )
CITY OF ALIQUIPPA,                      )
                                        )
                Defendants.             )

## MEMORANDUM OPINION

The above-captioned matter involves alleged civil rights claims, brought pursuant to 42

U.S.C. § 1983, by police officer Kenneth Watkins ("Plaintiff") against his employer, City of

Aliquippa ("Aliquippa"); Dwan Walker, the Mayor of Aliquippa ("Mayor Walker"); and David

Lozier, the District Attorney of Beaver County ("District Attorney Lozier").  Presently before the

Court are the motions to dismiss Plaintiff's Second Amended Complaint pursuant to Rule 12(b)(6)

of the Federal Rules of Civil Procedure and briefs in support thereof, filed by District Attorney

Lozier (Docket Nos. 48, 49) and by Aliquippa and Mayor Walker (Docket Nos. 50, 51), the briefs

in opposition filed by Plaintiff (Docket Nos. 52, 53), and the reply filed by Aliquippa and Mayor

Walker (Docket No. 54).  For the reasons set forth herein, District Attorney Lozier's motion is

granted, and Aliquippa and Mayor Walker's motion is granted in part and denied in part.

### I.      Background

As alleged in the Second Amended Complaint ("Complaint"), Plaintiff is employed by the

Aliquippa Police Department.  (Docket No. 45, ¶ 9).  Plaintiff held the position of Sergeant

between approximately August 24, 2014 and December 22, 2018.  (*Id.*).  On or about December

4, 2018, Plaintiff testified as a witness in his capacity as a private citizen during a criminal preliminary hearing. (*Id.* ¶¶ 10, 11). At the hearing, Plaintiff invoked his Fifth Amendment right against self-incrimination and refused to testify. (*Id.* ¶ 12).

The following day, District Attorney Lozier sent a letter to Plaintiff's supervisor stating that: (1) by invoking his constitutional rights, Plaintiff called into question every criminal case he was involved in as a police officer; (2) Plaintiff cannot be called to testify in a jury trial as a law enforcement officer; (3) no case can be built upon Plaintiff's testimony in pre-trial procedures as a law enforcement officer; and (4) the Commonwealth of Pennsylvania will dismiss any and all active cases in which Plaintiff was the affiant. (Docket No. 45, ¶¶ 6, 13). As a result of this letter, Plaintiff was ordered to attend a *Loudermill* hearing on December 22, 2018. (*Id.* ¶ 16). At that hearing, Mayor Walker made statements about Plaintiff invoking his constitutional rights. (*Id.* ¶ 17). Also at that time, Mayor Walker, purporting to act as a decision-maker for Aliquippa, demoted Plaintiff from Sergeant to Patrolman. (*Id.* ¶¶ 18, 21). Plaintiff claims that he did not voluntarily accept the demotion, but that, on the advice of his union representative, he agreed to the demotion under duress after being informed that he would likely be terminated from his position if he did not do so.[1] (*Id.* ¶¶ 19, 20).

On October 27, 2020, Plaintiff filed his Complaint, alleging two Counts: (1) "Violation of Plaintiff's Constitutional Rights, Specifically, § 1983 and the Fourteenth Amendment of the United States Constitution, Stigma Plus" (Plaintiff v. Aliquippa and Mayor Walker); and (2) "Violation of Plaintiff's Constitutional Rights, Specifically, § 1983 and the Fifth Amendment of the United States Constitution, Retaliation" (Plaintiff v. all Defendants). (Docket No. 45 at 5-

---

[1]     The parties' briefing indicates that Plaintiff had union representation at his hearing, and that Plaintiff agreed in writing to his demotion. Aliquippa and Mayor Walker have attached that written agreement to their motion to dismiss. (Docket No. 50-1).

8).  In essence, Plaintiff contends that his demotion from Sergeant to Patrolman and his inability to provide testimony in cases as well as the dismissal of the entirety of Plaintiff's active cases have discredited and/or harmed him publicly and professionally, and that such acts have falsely indicated to the public that Plaintiff engaged in wrongdoing and have damaged his reputation.  (*Id.* ¶¶ 23-25).  Defendants have filed their motions to dismiss Plaintiff's Complaint for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Their motions have been fully briefed and are ripe for decision.

## II.   <u>Standard of Review</u>

In considering a Rule 12(b)(6) motion to dismiss, the factual allegations contained in the complaint must be accepted as true and must be construed in the light most favorable to the plaintiff, and the court must "'determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'"  *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)); *see Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563 n.8 (2007).  While Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," the complaint must "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Phillips*, 515 F.3d at 231 (quoting *Twombly*, 550 U.S. at 555 (internal citation omitted)).  Moreover, while "this standard does not require 'detailed factual allegations,'" Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Id.* (quoting *Twombly*, 550 U.S. at 555); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).

It should be further noted, therefore, that in order to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).  The Supreme Court has noted that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  The standard "'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." *Phillips*, 515 F.3d at 234 (quoting *Twombly*, 550 U.S. at 556).  Moreover, the requirement that a court accept as true all factual allegations does not extend to legal conclusions; thus, a court is "'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555 (internal citation omitted)).

### III.     <u>Legal Analysis</u>

#### A.  <u>Count I:  Fourteenth Amendment, Stigma Plus, Pursuant to 42 U.S.C. § 1983 (Plaintiff v. Aliquippa and Mayor Walker)</u>

In Count I of his Complaint, Plaintiff alleges a claim against Aliquippa and Mayor Walker for violations of his rights under the Fourteenth Amendment to the Unites States Constitution (damage to his reputation, or "Stigma Plus") pursuant to 42 U.S.C. § 1983.  (Docket No. 45, ¶¶ 26-34).  In his brief in opposition to Aliquippa and Mayor Walker's motion to dismiss, Plaintiff indicates that he is withdrawing his claim at Count I.  (Docket No. 53 at 2 n.1).  Therefore, that Count will be dismissed with prejudice.

#### B.  <u>Count II:  Fifth Amendment, Retaliation, Pursuant to 42 U.S.C. § 1983 (Plaintiff v. All Defendants)</u>

In Count II of his Complaint, Plaintiff seeks damages from all three Defendants under 42 U.S.C. § 1983 for alleged violations of his constitutional rights under color of state law.  (Docket No. 45, ¶¶ 35-40).  Section 1983 is the "vehicle for imposing liability against anyone who, under

color of state law, deprives a person of 'rights, privileges, or immunities secured by the Constitution and laws.'" *Grammer v. John J. Kane Reg'l Ctrs.-Glen Hazel*, 570 F.3d 520, 525 (3d Cir. 2009) (quoting *Maine v. Thiboutot*, 448 U.S. 1, 4 (1980), and 42 U.S.C. § 1983). Here, Plaintiff alleges that he exercised a constitutionally protected right under the Fifth Amendment (i.e., his privilege against self-incrimination), that as a direct result he has been retaliated against by Defendants, and that such retaliation includes, but is not limited to, his demotion and inability to testify as a law enforcement officer. (Docket No. 45, ¶¶ 37, 38). Plaintiff contends that he has suffered injuries and damages including the violation of his Fifth Amendment rights, his demotion, irreparable damages to his reputation, and economic damages related to any and all other consequential costs. (*Id.* ¶ 40).[2]

In order to state a claim for retaliation, a plaintiff must adequately: (1) allege that his conduct was constitutionally protected; (2) allege that a retaliatory action occurred sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) establish a causal link between his constitutionally protected conduct and the adverse action taken against him. *See Proctor v. Burke*, 630 F. App'x. 127, 130 (3d Cir. 2015) (citing *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001)). If a plaintiff successfully alleges such elements, then in order to rebut that claim a defendant must show that he would have taken the adverse action regardless of the allegedly protected constitutional conduct. *See id.*

---

[2]   Aliquippa and Mayor Walker argue that Plaintiff may not pursue a claim against Defendants based on a violation of his Fifth Amendment rights because they are not federal actors. However, the United States Supreme Court expressly held in *Malloy v. Hogan*, 378 U.S. 1, 6 (1964), that the Fourteenth Amendment makes the Fifth Amendment privilege against self-incrimination applicable to the States. Therefore, Plaintiff, who cites to both the Fourteenth Amendment and the Fifth Amendment in his Second Amended Complaint, may pursue his claim based on his privilege against self-incrimination against Defendants here. (Docket No. 45, ¶¶ 2, 35).

Aliquippa and Mayor Walker cite to *Gardner v. Broderick*, 392 U.S. 273 (1968), in support of their argument that Plaintiff has not alleged constitutionally protected conduct here. Specifically, they contend that the Supreme Court held in *Gardner* that "there is no prohibition to disciplining a police officer for asserting his Fifth Amendment rights and in so doing, permanently affecting his ability thereafter from doing his job." (Docket No. 51 at 13). Defendants further assert that Plaintiff claims that Aliquippa "violated his Fifth Amendment right against self incrimination by discipling him for exercising that right," but that *Gardner* "makes clear that in so doing, the city did not violate Plaintiff's right when it chose to discipline him for exercising the right against [criminal] self incrimination." (*Id.*).

Plaintiff argues that Aliquippa and Mayor Walker misstate the holding of *Gardner* and, upon close review of the Supreme Court's opinion in that case, the Court agrees. *Gardner* involved a police officer who was called to testify before a grand jury investigating alleged bribery and corruption of police officers. *See* 392 U.S. at 274. In that case, the officer was advised that the grand jury would examine him regarding the performance of his official duties, and he was asked to sign a waiver of immunity after being told that he would be fired if he did not sign such document. *See id.* After the officer refused to sign the waiver, he was given an administrative hearing and was discharged pursuant to a provision of the New York City Charter. *See id.* The Supreme Court concluded that the officer's constitutional rights were violated in that situation and noted that the officer "was discharged from office, not for failure to answer relevant questions about his official duties, but for refusal to waive a constitutional right" or "for failure to relinquish the protections of the privilege against self-incrimination." *Id.* at 278.

However, the *Gardner* Court did *not* hold – as Aliquippa and Mayor Walker suggest – that just because the officer was not fired for refusing to testify, there is no prohibition on disciplining

6

an officer for exercising his Fifth Amendment rights.  Rather, the Supreme Court stated that "[i]f appellant, a policeman, had refused to answer questions *specifically, directly, and narrowly relating to the performance of his official duties*, without being required to waive his immunity with respect to the use of his answers or the fruits thereof in a criminal prosecution of himself," then "the privilege against self-incrimination would not have been a bar to his dismissal."  *Id.* (emphasis added).  Additionally, the Third Circuit has cited to *Gardner* in support of the proposition that "the privilege against self-incrimination is not infringed when police officers are disciplined or discharged for failing to 'answer questions specifically, directly, and narrowly relating to the performance of their official duties.'"  *See Fraternal Order of Police, Lodge No. 5 v. City of Phila.*, 859 F.2d 276, 281 (3d Cir. 1988) (quoting *Gardner*, 392 U.S. at 278, and *Uniformed Sanitation Men Ass'n v. Comm'r of Sanitation of City of N.Y.*, 392 U.S. 280, 284 (1968)).  Here, in contrast, Plaintiff has alleged that he was disciplined for refusing to testify in his capacity as a private citizen – not for failing to answer questions specifically related to the performance of his official duties.  (Docket No. 45, ¶¶ 10-12).  Thus, the situation presented in *Gardner* is clearly distinguishable from the facts of the present case, and the Supreme Court's *Gardner* opinion – which addressed a hypothetical failure to answer specific questions about official duties – simply does not support Defendants' argument here.  Therefore, viewing the allegations in the Complaint in the light most favorable to Plaintiff, the Court finds that he has sufficiently alleged that his conduct was constitutionally protected.

Additionally, the Court finds that Plaintiff has alleged facts sufficient to plead the second two requirements of a retaliation claim.  Plaintiff alleges that he was demoted and that he will not be permitted to testify as a law enforcement officer again, and thus he alleges retaliatory action.  Plaintiff also sufficiently alleges a causal link between the protected activity and the allegedly

retaliatory action since, shortly after he invoked his privilege against self-incrimination, the letter referenced, *supra*, was sent to Plaintiff's supervisor, and the *Loudermill* hearing (during which Plaintiff's failure to testify was allegedly addressed) as well as Plaintiff's actual demotion occurred immediately thereafter.  Furthermore, Defendants have made no attempt to argue that Plaintiff's demotion or his bar to testifying would have happened regardless of whether Plaintiff had invoked his privilege against self-incrimination.

Accordingly, the Court disagrees with Defendants' contention that Plaintiff has failed to plead sufficient facts to state a plausible claim for retaliation under Section 1983.

### 1. **District Attorney Lozier**

Plaintiff's claim in Count II is brought against District Attorney Lozier in his individual capacity only.  District Attorney Lozier argues, among other things, that even if Plaintiff has successfully pled a retaliation claim, such claim against him is barred by the doctrine of qualified immunity.  "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably."  *Id.*  Additionally, "[t]he protection of qualified immunity applies regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'"  *Id.* (quoting *Groh v. Ramirez,* 540 U.S. 551, 567 (2004) (Kennedy, J., dissenting)).

Specifically, the conduct of a government official "violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would [have understood]' that what he is doing violates that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). The doctrine of qualified immunity is intended to shield officials who make "reasonable but mistaken judgments about open legal questions," and it provides protection to "'all but the plainly incompetent or those who knowingly violate the law.'" *Ashcroft*, 563 at 743 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). Thus, the key question for a court to consider when considering whether qualified immunity protects an individual is whether the state of the law at the time the action occurred gave that individual "fair warning" that his action was unconstitutional. *See Hope v. Pelzer*, 536 U.S. 730, 741 (2002).

In determining whether the state of the law gave an individual such "fair warning," a court should first look to Supreme Court precedent. However, if no Supreme Court precedent exists, "it may be possible that a 'robust consensus of cases of persuasive authority' in the Court[s] of Appeals could clearly establish a right for purposes of qualified immunity." *Mammaro v. New Jersey Div. of Child Prot. and Permanency*, 814 F.3d 164, 169 (3d Cir. 2016) (quoting *Taylor v. Barkes*, 575 U.S. 822, 826 (2015)). Also, defining the right at issue is critical to a court's inquiry, and the court must frame the right "in light of the specific context of the case, not as a broad general proposition." *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

Here, Plaintiff alleges that, in direct response to the exercise of his constitutional right against self-incrimination, District Attorney Lozier made the decision not to call Plaintiff as a witness in his official capacity as a law enforcement officer in future proceedings, and to dismiss the pending cases in which Plaintiff was an affiant. (Docket No. 45, ¶¶ 13, 15, 22). Thus,

9

Plaintiff's retaliation claim against District Attorney Lozier is essentially based upon his not being called to testify as a law enforcement officer.  (*Id.* ¶ 38).  With regard to District Attorney Lozier, the question is therefore whether it was clearly established, at the time he took the alleged actions, that deciding not to call Plaintiff to testify as a law enforcement officer affiant in future proceedings, and dismissing all pending cases in which Plaintiff was an affiant, was a violation of Plaintiff's constitutional rights of which a reasonable person should have known.  No such law has been found, either by the parties or by the Court, that suggests that such actions qualify as a clearly established violation of constitutional rights.

As District Attorney Lozier points out, a police officer does not have a right to have a prosecutor call him to testify in a criminal prosecution, nor does a police officer have a right to decide whether a prosecutor will pursue the prosecution of someone who that officer had charged with a crime.  Instead, the decision of who will or will not be prosecuted rests with the prosecuting authority.  *See, e.g., Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) (explaining that generally "a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another").  Additionally, the defense of absolute immunity protects prosecutors with regard to prosecutorial duties that are intimately associated with the judicial process, including initiating and presenting a criminal prosecution.  *See Imbler v. Pachtman*, 424 U.S. 409, 430 (1976).  Similarly, "[a]s with the decision to initiate charges, the decision whether or not to dismiss a pending criminal case is unquestionably within a prosecutor's role as advocate."  *Zimmerman v. Corbett*, No. 13-2788, 2015 WL 539783, at *6 (M.D. Pa. Feb. 10, 2015).  Therefore, the Court finds that, even if a constitutional violation occurred here – upon consideration of the broad discretion afforded to prosecutors under the law, as well as the lack of any case holding that similar actions caused a violation of a constitutional right – any such right was not "clearly established" at the time of

District Attorney Lozier's actions.[3]  Therefore, based upon the state of the law at the time, it cannot be concluded that District Attorney Lozier knew that his conduct violated Plaintiff's Fifth Amendment rights.

Accordingly, as a matter of law, the Court finds that District Attorney Lozier is entitled to qualified immunity in this matter, and Plaintiff's claim against him in Count II should be dismissed without prejudice to amendment with sufficient facts to state a claim upon which relief can be granted.

## 2.  **Mayor Walker**

Plaintiff's claim in Count II is brought against Mayor Walker in both his individual and his official capacities.  To the extent that Count II is brought against Mayor Walker in his official capacity, however, the claim should be dismissed with prejudice since it also names Aliquippa as a defendant.  *See Kentucky v. Graham*, 473 U.S. 159, 165-68 (1985) (explaining that official capacity claims need not be brought against local government officials since *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658 (1978), held that local government units can be sued directly for damages and injunctive relief); *Schor v. N. Braddock Borough*, 801 F. Supp. 2d 369, 376-77 (W.D. Pa. 2011) (explaining that, since local government agencies can be sued

---

[3]      Since the Court finds that District Attorney Lozier is clearly entitled to the protection of qualified immunity under the facts alleged here, it need not determine whether the doctrine of absolute immunity also protects District Attorney Lozier in the situation presented.  The Court does note, however, that District Attorney Lozier allegedly made a blanket decision not to prosecute any cases in which Plaintiff would be an affiant (both present and future), and that, due to the breadth of that decision, it is not clear that such a decision would be protected by absolute immunity.  *See, e.g., Fogle v. Sokol*, 957 F.3d 148, 160 (3d Cir. 2020) (explaining that "'prosecutorial immunity analysis focuses on the unique facts of each case and requires careful dissection of the prosecutor's actions,'" and the prosecutor must "demonstrate 'that absolute immunity should attach to each act he allegedly committed that gave rise to a cause of action'" (quoting *Odd v. Malone*, 538 F.3d 202, 210 (3d Cir. 2008), and *Light v. Haws*, 472 F.3d 74, 80 (3d Cir. 2007))); *Odd*, 538 F.3d at 208 ("[I]mmunity attaches to actions 'intimately associated with the judicial phases of litigation,' but not to administrative or investigatory actions unrelated to initiating and conducting judicial proceedings." (quoting *Giuffre v. Bissell*, 31 F.3d 1241, 1251 (3d Cir. 1994))); *Yarris v. County of Delaware*, 465 F.3d 129, 137 (3d Cir. 2006) ("'[W]here the role as advocate has not yet begun . . . or where it has concluded, absolute immunity does not apply.'" (quoting *Spurlock v. Thompson*, 330 F.3d 791, 799 (6th Cir. 2003))).

directly, claims brought against municipal employees or office holders are redundant of claims brought against the municipality and should be dismissed).

To the extent that the claim in Count II is brought against Mayor Walker in his individual capacity, Mayor Walker argues – like District Attorney Lozier – that even if Plaintiff has pled a claim of retaliation, such claim against him is barred by the doctrine of qualified immunity.  As set forth, *supra*, Plaintiff alleges that, because he exercised his constitutional right against self-incrimination and refused to testify at a criminal hearing, District Attorney Lozier decided that Plaintiff would not be called to testify in any other criminal proceeding in his official capacity, and that pending cases in which Plaintiff was an affiant would be dismissed, at which point an administrative hearing was held and Mayor Walker demoted Plaintiff from Sergeant to Patrolman. Therefore, with regard to Mayor Walker, the Court must determine whether it was clearly established at the time that demoting Plaintiff, under the circumstances alleged, entailed a violation of his constitutional rights of which a reasonable person should have known.

Here too, no law has been found, either by the parties or by the Court, suggesting that Mayor Walker's action entailed a clearly established violation of constitutional rights.  *Gardner*, which both parties discuss at length, addressed the unconstitutionality of a police officer being discharged for failing to waive his privilege against self-incrimination regarding testimony about the performance of his official duties, and is thus distinguishable from this case.  *See* 392 U.S. at 273.  The other cases to which Plaintiff directs the Court's attention, and which are cited in Plaintiff's more general discussion of retaliation (*see* Docket No. 53 at 4-5, 8), are also distinguishable from the facts of this case and similarly fail to support his argument.  *See, e.g., Mearin v. Dohman*, No. 06-4859, 2009 WL 3127760, at *6-7 (E.D. Pa. Sept. 29, 2009) (in which a prisoner alleged retaliation claims against prison officials based on his exercise of his privilege

against self-incrimination); *Taylor v. City of Phila.*, No. 03-3068, 2004 WL 1126015, at *13 (E.D. Pa. May 20, 2004) (in which a police dispatcher was dismissed after her son was arrested and she exercised her privilege against self-incrimination, although her silence was not considered a substantial factor in her dismissal); *Harold v. Barnhart*, 450 F. Supp. 2d 544, 557 (E.D. Pa. 2006) (in which a Social Security Administration employee's removal was proposed for cause, not because of or subsequent to the assertion of her right under the Fifth Amendment); *Fraternal Order of Police*, 859 F.2d at 281-83 (finding that no Fifth Amendment violation existed where a police department required Special Investigation Unit applicants to fill out a questionnaire); *United States v. Warren*, 338 F.3d 258, 263-64 (3d Cir. 2003) (involving an appeal of a sentence following a guilty plea in which the court was asked to determine whether a defendant may invoke the Fifth Amendment and refuse to provide the government with additional information and still qualify for the "Safety Valve" provision, and noting cases that have ruled that the government may not impose a penalty for a person asserting his Fifth Amendment privilege (citing *Minnesota v. Murphy*, 465 U.S. 420, 434 (1984) (involving the revocation of probation); *Lefkowitz v. Cunningham*, 431 U.S. 801, 804-08 (1977) (involving a political party officer's removal from his position); *Lefkowitz v. Turley*, 414 U.S. 70, 77-84 (1973) (involving threat of loss of award of government contract); *Uniformed Sanitation Men Ass'n*, 392 U.S. at 284-85 (similar to *Gardner*, but involving sanitation workers who were dismissed for refusing to sign waivers of immunity or for invoking their privilege against self-incrimination); *Gardner*, 392 U.S. at 276-79 (discussed, *supra*))).  Despite the variety of cases cited by Plaintiff that discuss the Fifth Amendment privilege against self-incrimination generally, however, such diverse fact patterns (none of which are similar to the facts here) are not sufficient to support the argument that Mayor Walker's action in demoting Plaintiff was a "clearly established" violation of Plaintiff's constitutional rights.

Therefore, based upon the state of the law at the time of his actions, it cannot be concluded that Mayor Walker knew that his conduct violated Plaintiff's Fifth Amendment rights. Accordingly, as a matter of law, the Court finds that Mayor Walker is entitled to qualified immunity in this matter, and Plaintiff's claim against him in his individual capacity in Count II should be dismissed without prejudice to amendment with sufficient facts to state a claim upon which relief can be granted.

### 3.  City of Aliquippa

Aliquippa and Mayor Walker argue that Plaintiff's claim against Aliquippa in Count II should be dismissed because he has failed to state a claim against it.  To hold the City of Aliquippa, a municipality, liable for violations under Section 1983, Plaintiff must allege more than a violation of Plaintiff's rights by an Aliquippa employee (here, Mayor Walker); Plaintiff must also sufficiently plead that those alleged violations are *attributable to* Aliquippa.  "'[A] municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory.'"  *Robinson v. Fair Acres Geriatric Ctr.*, 722 F. App'x 194, 197-98 (3d Cir. 2018) (quoting *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658, 691 (1978)).  Thus, the alleged violation of rights must have been caused by actions that were taken pursuant to a municipal "policy" or "custom."  *See id.* at 198 (citing *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 583-84 (3d Cir. 2003)); *see also Monell*, 436 U.S. at 690-94.  "A policy is made 'when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues a final proclamation, policy or edict.'"  *Natale*, 318 F.3d at 584 (quoting *Kneipp v. Tedder*, 95 F.3d 1199, 1212 (3d Cir. 1996)).  A "custom," on the other hand, involves "'practices of state officials . . . so permanent and well

14

settled as to constitute a 'custom or usage' with the force of law.'"  *Monell*, 436 U.S. at 691

(quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167-68 (1970)).

Acts by a government employee may be deemed to be the result of a policy of the entity

for whom the employee works in three situations:  (1) where the individual acted pursuant to a

formal policy; (2) where the individual himself has final policy-making authority such that his

conduct represents official policy; or (3) where a final policy-maker renders the individual's

conduct official for liability purposes by having delegated to him authority to act or speak for the

government.  *See Hill v. Borough of* Kutztown, 455 F.3d 225, 245 (3d Cir. 2006); *Jones v. Pittston*

*Area School Dist.*, No. 18-1919, 2021 WL 3673840, at *5 (M.D. Pa. Aug. 18, 2021).

Defendants argue that Plaintiff has alleged no policy or custom of Aliquippa that violated

his constitutional rights.  However, Plaintiff explains in his brief that he is, in fact, pursuing the

second theory of liability in his Complaint, that "Defendant Walker, as mayor (and *de facto* head

of Defendant Aliquippa's police department), acted as a decisionmaker with final authority to

discipline municipal employees when he demoted the Plaintiff from sergeant to patrolman."

(Docket No. 53 at 7).  Upon review of the Complaint, the Court notes that Plaintiff alleges that

Mayor Walker was "at all times relevant to Plaintiff's claims, the duly elected mayor of the City

of Aliquippa, employed by the City of Aliquippa, and purporting to act within the full scope of his

authority and office and under color of state law, and pursuant to the statutes, ordinances,

regulations and customs and usages of the City of Aliquippa."  (Docket No. 45, ¶ 7). The

Complaint also alleges that at Plaintiff's *Loudermill* hearing, Mayor Walker "in his capacity as

mayor of Defendant Aliquippa, made statements about the Plaintiff invoking his constitutional

rights" and "demoted the Plaintiff from sergeant to patrolman" at that time.  (*Id.* ¶¶ 17, 18).

15

Additionally, the Complaint alleges that "Defendant Walker purported to act as a decision-maker for Defendant Aliquippa in his capacity as mayor of Defendant Aliquippa." (*Id.* ¶ 21).

Accepting the factual allegations contained in the Complaint as true and construing them in the light most favorable to Plaintiff, the Court finds that under a reasonable reading of the Complaint, Plaintiff has adequately alleged municipal liability of Aliquippa based on Mayor Walker having such final policy-making authority that his conduct represents official policy, and Plaintiff may therefore be entitled to relief. *See Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)); *see Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563 n.8 (2007). Plaintiff has therefore "'state[d] a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

Accordingly, Aliquippa and Mayor Walker's motion to dismiss will be denied to the extent that it seeks the dismissal of Plaintiff's claim against Aliquippa in Count II.

## IV.    **Conclusion**

In summary, as Plaintiff has indicated that he wishes to withdraw Count I of the Complaint, that Count will be **dismissed with prejudice**. District Attorney Lozier's motion to dismiss pursuant to Rule 12(b)(6) will be **granted**, and Plaintiff's claim against District Attorney Lozier in his individual capacity in Count II will be **dismissed without prejudice** to amendment with sufficient facts to state a claim upon which relief can be granted. Aliquippa and Mayor Walker's motion to dismiss pursuant to Rule 12(b)(6) will be **granted in part and denied in part**. To the extent that the motion seeks the dismissal of the claim in Count II against Mayor Walker in his official and individual capacities, the motion will be **granted**. Plaintiff's claim against Mayor Walker in his official capacity in Count II will be **dismissed with prejudice**, and Plaintiff's claim

16

against Mayor Walker in his individual capacity in Count II will be **dismissed without prejudice**

to amendment with sufficient facts to state a claim upon which relief can be granted.  To the extent

that the motion seeks the dismissal of the claim in Count II against Aliquippa, the motion will be

**denied**.

      An appropriate Order follows.


                                  *s/ W. Scott Hardy*
                                  W. Scott Hardy
                                  United States District Judge

Dated:  December 21, 2021

cc/ecf:  All counsel of record